Good morning. Our first case is Hanif versus Attorney General. I understand time will be divided between counsel for Mr. Hanif and Amicus, is that correct? That's correct, Your Honor. And Mr. Munich? Yes, Judge. Okay, when you're ready. Your Honor, Petitioner and Amicus collectively reserve two minutes for rebuttal. Granted. May it please the Court, my name is Ryan Munich and I'm here today on behalf of the Petitioner, Zaman Hanif. Let me just ask you to get up on that mic a little bit so we can hear you. Sure. Today I'd like to address two points with the Court and rely on the briefs for the remainder of the argument. The first point I'd like to address is that the Immigration and Nationality Act 212H, as the government argues, is somehow ambiguous. The second argument I'd like to address is I'd like to explain why giving effect to both statutory terms in 212H does not lead to an absurd result. At issue here is Petitioner's ability to qualify for a 212H waiver for a criminal conviction. The statute at issue here gives the Attorney General discretion to waive a criminal inadmissibility ground and to admit an alien, if failure to do so, would cause extreme hardship to qualifying relatives. I guess that the felony here was not aggravated, is that right? That's correct, Your Honor, as Mr. Hanif was only sentenced to four months in jail. In this particular case, qualifying relatives include a paraplegic stepson, two U.S. citizen children, a U.S. citizen wife, and two lawful permanent resident parents. However, in the 212H statute, there is a preclusionary bump section at the end that reads, an alien who has previously been admitted as an alien lawfully admitted for permanent residence does not qualify if either since the date of such admission, the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for seven years before initiation of approval proceedings. Who was it? Well, Your Honor, our argument is that the bump section does not apply at all. In this particular case, Mr. Hanif was adjusted in 2006 and initiation of proceedings was in 2009. So, if the statute applied, he would not have the accrued seven years, that's correct. I mean, if the change in the status was admission then he wouldn't make the seven. That's correct. If you consider the change in status to be an admission as admission is used in 212H, yes. That's the issue, isn't it? It is the issue, Your Honor. Now, the two statutory terms at use here, admitted and alien lawfully admitted for permanent residence, have been defined by various courts as being one as procedural and one as substantive. Under 101A13, definition for admitted, entry after inspection and authorization to enter the United States has been defined as a procedural mechanism. Lawful permanent residence can make an entry, can make an admission, non-immigrants can make an admission. There are various ways to make an admission, but it's procedural in nature and it requires inspection by an immigration officer. Conversely, an alien lawfully admitted for permanent residence has been defined as being the status of being admitted. That can arise in two ways. It can either arise through consular processing, where one is admitted as an alien lawfully admitted for permanent residence, or it can arise in a post-entry adjustment of status here in the United States. Now, the plain language of the two statutory terms in combination would read a lawful permanent resident must have been admitted as a lawful permanent resident at the border after inspection and authorization in order for both statutory terms to apply. So you're not admitted to the United States as a lawful resident. If you come in illegally and you're later, your status is changed because the admission refers to the method of entry in the first place. Well, if admitted is used by itself, Your Honor, that's arguable. But the argument here is that both statutory terms in combination lead to that result. Under Immigration and Nationality Act 245B, the date of entry for lawful permanent residents can be recorded as the date of admission. But in this particular case, the unique use of both statutory terms, the first statutory term admitted, is a limitation on the preclusionary grounds. And there's been several Courts of Appeals cases that have followed your position. Yes, Your Honor. And apparently could have gone the other way. That's correct, Your Honor. Therefore, if we would not grant you relief, we would be creating a conflict among the circuits. That's correct, Your Honor. Now, as I mentioned previously, Petitioner adjusts the status here in 2006. He left the United States and was paroled into the country for prosecution. As defined by the plain language of the statute, a parole does not qualify as an admission. So our contention is that he still has not been admitted as an alien lawfully admitted permanent resident, and therefore the preclusionary grounds don't apply. He doesn't need to satisfy the seven years of lawful residence. And were this an aggravated felony, it would also not bar his qualifying for the waiver. A quick note, the Board of Immigration— Did you mention that it's not an aggravated felony just based on what the sentence was? In this particular case, Judge Greenaway, the aggravated felony definition for a crime involving counterfeit currency does require a sentencing of one year or more. So because he was only sentenced to four months, as the government agreed for the immigration judge, there is no aggravated felony bar here. Now, in the Board of Immigration Appeals case in the matter of Kuljinovic, the Board does not claim that 212H is ambiguous. It claims that the statute is rather—leads to an absurd result. So nevertheless, this court can determine that the statute is ambiguous under Chevron Step 1 because this court is the final decider on what statutory language means. So just briefly, I'd like to address why this statute is not ambiguous. In order to be ambiguous, the language has to be reasonably susceptible to differing interpretations. When you use statutory terms, the presumption is that Congress uses such terms purposefully, and the specific inclusion of those terms in some places in the act and non-inclusion in other places must be given effect. Now, there's a recent Fourth Circuit opinion, Bracamonte's v. Holder. In dicta, the majority opinion says that it may be ambiguous with respect to permanent residents who enter without being inspected and authorized to enter. Petitioner would argue that this does not actually create an ambiguity. 212H simply does not address when a lawful resident does not make an entry. It does simply not address whether that person is precluded. It merely distinguishes between the manner of entry. As this court held in Presto Espanol and in De Leon Ochoa, the failure of the statute to address every possible application does not make the statute ambiguous to those other applications. You're better off if you sneak in rather than come in legitimately. Well, we wouldn't say you're better off, Your Honor. It's just the preclusionary effect doesn't prevent you from applying for the waiver. Well, I mean better off than what you're doing here today. Well, as a matter of discretion, the immigration judge would still be able to deny the waiver. Yeah, but you couldn't get that far if you came in. That's correct, Judge. And courts of appeals have held that there could be several plausible policy explanations as for why this would result in this result. But I see my time is up, so thank you. Thank you, Mr. Munich. Mr. Winograd. Judge Hardiman, and may it please the Court, Ben Winograd representing the American Immigration Council as amicus curiae. We believe this case presents an issue of pure statutory construction that should be resolved under the first step of Chevron. The precise question at issue is whether the petitioner has previously been, quote, admitted to the United States as an alien lawfully admitted for permanent residence. While the redundancy of this language may create an impression or facade of ambiguity, in fact, it is the repeated use of the term admitted that makes the intent of Congress so clear. The first use of the word admitted, as in admitted to the United States, incorporates the statutory definition of that term at 8 U.S.C. 1101A13A. That definition refers to the process of an alien entering the United States, physically entering the United States, after inspection and authorization at a port of entry. So anyone who's EWI by definition can't be admitted? One who enters without inspection is not admitted, correct, Your Honor. The second use of the term is within the phrase lawfully admitted for permanent residence. That expression is separately defined at 8 U.S.C. 1101A20 as the status given to aliens who are accorded the privilege of residing permanently in the United States. By using these two statutorily defined terms in combination, the first procedural, the second substantive, Congress was plainly referring to aliens who were physically admitted in LPR status at a port of entry as distinct from aliens who entered in another fashion and subsequently adjusted to LPR status. All right. Let's assume for a minute that we agree with your analysis of how the statute operates. Address for us what Judge Greenberg was alluding to about this apparent incongruity that someone who goes through the lawful procedure seems to be more disadvantaged than someone who enters without inspection. Certainly, Your Honor. Judge Greenberg, your point is well taken, but we would point out to the Court that this provision has no application whatsoever to an alien who is currently in the United States unlawfully or who is currently only in non-immigrant status. Congress specifically targeted this provision only at people who are in LPR status. So Congress was not trying to punish those aliens who might otherwise be deemed most culpable, but it was simply trying to hold accountable those aliens who should be held to the highest standard. Now, in terms of incentives, we think it is not certainly, it's not reasonable to think that an alien would intentionally enter the country unlawfully, so that in the event he were to subsequently adjust to LPR status and then be convicted of a crime, that he would retain eligibility for a waiver of inadmissibility that can only be granted in the case of extreme discretion of federal immigration authorities. Let me just, I think it's safe to say you know this area of the law a lot better than I do, so I'm going to ask you just to back up a little bit. Yes, Your Honor. Did I understand your answer to be saying that we don't really look at this person as just having snuck into the country, to put it colloquially. You have to look at this person as someone who has gained legal permanent residence status. Is that the crux of your answer? Yes, this statute is solely concerned with the manner in which an alien is accorded LPR status and not in the manner that they previously entered the country. All right, but they haven't yet gotten LPR status, right? Oh, yes. Someone who is currently President of the United States in violation of immigration laws would still be eligible, does not have to meet the seven-year requirement, in other words, in order to apply for a 212H waiver. All right, so why – I'm not sure that I hear your answer to the problem posed by Judge Greenberg. Doesn't this still put the person who snuck into the country on a better footing than someone who was admitted to the country? As an LPR? Yes. Yes, but that is by Congress's design. Then why isn't that absurd? Why isn't it absurd for Congress to put those that come in and declare themselves and follow the rules at a disadvantage when compared to those who sneak in? Well, as other courts have found in the equal protection context, when addressing the distinction between LPRs and non-LPRs, Congress could have reasonably believed that LPRs should be held to a higher standard precisely because of the greater rights and privileges that they enjoy. And therefore, if it is rational for Congress to hold LPRs to a higher standard than non-LPRs, so isn't it rational for Congress to hold – yes? – as opposed to a person who came in without inspection, the privileges that that person would enjoy after he or she adjusted her status to legal permanent residence? Yes. Once someone adjusts to lawful permanent residence, they enjoy those same rights and privileges. Well, so at that point, that person who adjusted but came in illegally to start with would be better off than the person who was legal throughout, including the instant of entry. That is true, but we believe that was by congressional design because the latter group of individuals could rationally be held to a higher standard. And also, it's not simply people who came in illegally who would be in a better off position. It would be people who were paroled into the country, people who came into the country as refugees, and people that came in in temporary non-immigrant status. Isn't your position that you can't look at the two persons that we're talking about hypothetically? You're only looking at that in a moment in time. I mean, it may appear that one is advantaged at a moment in time, but for there to be an absurd result, it would have to require more than just that snapshot. That is correct, Your Honor. And I would also point out that, as this Court said in Fogelman v. Mercy Hospital, a statutory result can only be described as absurd if it is one that, quote, no rational legislature could have intended. All that is needed is a plausible explanation, even if that explanation is not one that is particularly convincing. And the Fourth, Fifth, and Eleventh Circuits have identified two plausible explanations why Congress would have disadvantaged people who came in as LPRs over all other classes of aliens. Would this case be different if the first admitted wasn't there in the sentence? You know, if the sentence was rewritten and it said that it could be given a waiver if he had been admitted for lawful permanent residence, could that be? Correct, Your Honor. If Congress had written the statute to say no waiver shall be granted under this subsection in the case of an alien lawfully admitted for permanent residence, then yes, it would apply to the petitioner. It's the redundant use of the term admitted. So admitted in a sense means two different things. As you say, the first is a process and the second is a status. Yes, but the second is part of a compound expression, lawfully admitted for permanent residence, which refers solely to the status and has no regard for the manner in which that status was obtained. I guess you agree that how many circuits have ruled your way on this? Three, Your Honor, the Fourth, Fifth, and Eleventh Circuits. Did any go the other way? None have. I would note, though, that the Fourth Circuit, as the petitioner mentioned, did have a path. I'm sorry? There was a dissent. There was a dissent in the Fourth Circuit, correct, Your Honor, which we, of course, disagree with. There was also language in the majority of the opinion, the majority of Fourth Circuit opinion, that seemed to possibly reserve the question of what would happen in the case of someone like the petitioner who had no prior admission before adjusting to LPR status. Well, let me ask you this question. We would have to do a – what is the BIA doing? The BIA has a different view. What do they do in those three circuits? The BIA is resting on a theory. It's called the Adjustment as Admission Theory, namely that an adjustment of status always constitutes an admission, even though the definition of the term admission does not include adjustment of status. I'm going contrary to you, but can they do that in the circuits which have these rulings? We believe not, Your Honor. We believe that the Board is bound. I've seen the Board will come out with opinions that say, well, since this case was completed in Newark, we're going to apply the Third Circuit rule or something like that. Yes, the Board is bound by the decisions in cases arising in the Fourth, Fifth, and Eleventh Circuits. I see my time is up. Thank you. Thank you, Mr. Winograd. Ms. Browning? May it please the Court, my name is Rachel Browning, and I represent the United States Attorney General. In this case, the issue is whether the Board reasonably construed Section 212H to conclude that Mr. Honiff was ineligible to apply for a waiver of inadmissibility because he had not yet fulfilled the required seven years of residency after his admission as a lawful permanent resident. The U.S. Supreme Court has said that a word in a statute is given more precise content by the neighboring words with which it associates. In this case, lawfully admitted for permanent residence gives precise content to admission. And what the Board has found in Kuljinovic is that the definition at 101A.13a is not a complete definition of admission, that when you look to the context of the statute and Section 245, the Board has long held that an adjustment of status constitutes an admission. And if you look at the language that Congress uses in these other sections when talking about adjustment of status, it's clear that an adjustment of status is considered to be an admission. Can you cite a case, though, where the Supreme Court has followed nositura associis in spite of a statutory definition of a word? That strikes me as a fairly remarkable proposition. You understand the question? Yes, but I cannot cite off the top of my head. I mean, we deal with nositura associis in many cases, but to the best of my recollection, there are always cases where we need an interpretive tool to help us figure out what this collection of words or what this particular word means. Here, your adversaries are relying on a specific statutory definition of the word admission. Wouldn't that have to control and make nositura associis inapplicable here? Well, yes, Your Honor, but our point is that admission, when you look in this section of the statute, the term admission is not confined to the definition at 101A13a. If it were, Mr. Haniff wouldn't even be able to apply for a waiver of inadmissibility because he wouldn't be applying for admission in this context. He could only do that if he were going back to the border. And the term inspection and authorization is not defined by 101A13a. So when a person goes through adjustment of status, they are very much being inspected and authorized to remain in the United States as a person lawfully admitted for permanent residence. And as the Board has said, this is a procedural mechanism by which an alien is assimilated to the position of one seeking admission. And this goes back way before the amendments in 1996. If you go back to a case of Rainford, which is when the Board first, well, reaffirmed that adjustment of status is an admission. They cited two cases dating before that. In 1999, in the case of Rosas Ramirez, the Board looked at admission in the context of whether a lawful permanent resident could apply for a waiver or could be found removable under Section 237A2A3 by reason of having committed an aggravated felony at any time after admission. If the Board had confined the definition of admission at that point to 101A13a, that person would not have been removable. And they found that to be an absurd result and not what Congress would have intended. And so they took, they looked at 101A13a and said that that did not adequately answer the question of the intended scope of admission within that context. And so in Kuljinovic, they're essentially doing the same thing. And looking at – But how do we equate adjustment of status with admission? They just, they seem like different concepts, don't they? The Board is telling us to consider them as synonymous. Well, when you look at the procedure, Your Honor, whether you're talking about admission at the Board or as a lawful permanent resident or adjustment of status to a lawful permanent resident in the United States, the procedures are very similar. You have to have the same eligibility criteria. Well, but now you're putting all the words together. Don't we have to look at the word admission first and then lawfully admitted as a permanent resident? Because we can't read the first admission out of the statute. That's another time-honored canon rule of superfluity. Your Honor, what I think the Board is doing is looking at admission, the procedure of admission as there being two possibilities by which a person can be admitted. And that can be at the border and also admitted in the United States, pursuant to an adjustment of status. But where in the definition does it suggest that? In the definition of the word admission, there's no reference to adjustment of status, is there? No, Your Honor, and the Board admits that. But when you look at the context of the statute and a waiver of inadmissibility, which is available to aliens both in the United States and at the border, and you look at the definition of 101A20, which refers to the status of being a person lawfully admitted for permanent residence, that's what gets you to the adjustment of status definition, which refers to adjustment as admission. Well, let me ask you this question. How does a literal interpretation of 1182H frustrate Congress's intent? A literal interpretation frustrates congressional intent because in enacting this portion of the statute, Congress was trying to create congruity between waivers under 212H and something called cancellation removal, which is available to lawful permanent residents who are found removable and are in removal proceedings. In both of those laws, Congress wanted a seven-year residency requirement to apply, and they did not want lawful permanent residents to be eligible to apply if they had committed aggravated felonies. And we cite to you that section on page 25 of our brief. So this interpreting it – But if they wanted to incorporate or envelop a larger group or subset, they could have done that pretty easily. A subset of? Of all people entering – I mean, this is a subset of all people who enter the United States, right? Correct. And I think what they were doing was they're designating lawful permanent residents who do something to render themselves inadmissible or removable, have these two types of relief available to them. And in both types of relief, Congress wanted a seven-year residency requirement so that you're allowing only those people who have a certain amount of longevity in the United States. There's no indication that they were looking to bifurcate aliens based – or lawful permanent resident aliens based on the mechanism by which they acquired lawful permanent resident status. But the problem that I think we're all grappling with is what basis is there to equate admission and lawfully admitted for permanent residence? The basis lies in section 245, which is the adjustment section of the statute, which says that 245A1, an alien present in the United States who has not been admitted or who arrives in the United States shall be deemed for purposes of this chapter an applicant for admission. And you look to different subsections, 245Aa, an alien who has never been admitted or paroled but who unlawfully entered the United States, says the Attorney General shall adjust the status of such an alien to that of an alien admitted for lawful permanent residence, despite the fact that that person has never appeared at the border. You're asking us to create – and maybe this is a good thing – a conflict among the circuits because the courts of appeals are against you. Well, if I could speak to that for a second, Your Honor. First of all, as opposing counsel pointed out, Bracamontes in the Fourth Circuit seemed to suggest that their holding was confined to the particular facts of that case, which was a person who had been admitted in another status and then later adjusted. And they left open the possibility that someone in Mr. Honov's position who had never had a previous admission, that the statute was silent as to what to do in that scenario. Martinez in the Fifth Circuit was actually decided before the boards in Kuljinovich, and they were also not presented with the facts of this case. So it's difficult to know what the Fifth Circuit would have decided, both if they had had the benefit of the board's analysis in Kuljinovich and the facts as presented in this case with an alien without any prior admission. You know, you used the word before, and I can't resist pointing out, you said that the board admitted something. And I thought to myself, well, it just goes to show how admitted can mean different things in different places. Is that admitted had nothing to do with this? That was your expression. Okay. They admitted it. They admitted some position. We don't need to deal with that third version of admitted. Okay, okay. Thank you. We have enough trouble dealing with the two apparent differences. Go ahead. So really the only circuit that's – So what about Lanier, though? You might want to mention Lanier. Lanier is the only circuit in which they've just flatly – And that was after Kuljinovich. Yeah, and it was after – and they disposed of Kuljinovich in a footnote, didn't really look at all at the board's analysis and just found it unambiguous, which is not our position. Do you know if it's overwhelming precedent that that's true? I would not characterize it that way at this point, Your Honor. Trend against you. It's not – yeah. Five circuits. Five circuits. Well, as I understand your argument, you're saying even recognizing that they've come out the other way, they were not presented with this precise fact. In two of those cases, correct. In two of the three. I would also point out that the Ninth Circuit, in a case called Ocampo-Duran, basically deferred or agreed with the board's position in Rosas, which was that an adjustment could be an admission within the context of a permanent resident who's removable under 237A2A3 by reason of having committed an aggravated felony after admission. What about the practical import of this? Let's assume for a minute we went with the circuits that have decided the case or similar cases. It doesn't mean the person's going to get a waiver of inadmissibility. I mean, right? Can't the agency take into account all the facts and circumstances, including the manner in which the person entered the country and their longitudinal behavior since they've gotten here? It's a discretionary waiver at the end of the day. So the judge would take into account those factors, the extreme hardship to the qualifying relative. But one thing I would like to point out about that, the absurdity. Yeah, that's a high threshold, right? So give us your best argument or arguments as to why it is absurd. Because in this case, Your Honor, if you're going to hold the definition of admission to that which is at A13A, then a person in Mr. Honiff's position would still be ineligible for the waiver because any hardship that would arise to his qualifying relative, which is the standard, could not be on account of a denial of his admission. You can't use a definition restricted in one way in the same statute and then apply another in another section. So we're simply asking that the court recognize that what the board has said is that admission is not confined to the definition at 101A, 13A in these types of contexts because what the board has said and what the statute says is that an adjustment of status is an admission. If it were not, then you couldn't apply for a waiver of inadmissibility in this context because you would not be applying for admission. How would the board deal with that? Let's assume for a minute the Supreme Court or all the circuits held that adjustment of status is not an admission. Then how would the application for waiver of inadmissibility play out? I'm not sure, Your Honor. I mean, that would be something. I mean, because that's just... I mean, would you still have an argument at your disposal that the person is categorically ineligible? If the Supreme Court were to declare that admission is... adjustment of status is not included within the definition of admission, would you still have some argument that these folks, like Mr. Hennie, are categorically excluded from waiver of inadmissibility? I suppose they could do that. I think it would just disrupt the entire mechanisms by which, you know, aliens are admitted to this country. There's two different ways, and that's all the board is recognizing, is that you can go through the border or you can be admitted as a lawful permanent resident through the adjustment process. And that's something that's been recognized for a long time. When a person adjusts their status, the Attorney General is directed to record that person's lawful date of admission as of the date that that application is approved. And in addition to that, the State Department is directed to reduce the number of immigrant visas available to persons in those categories. So these are two separate ways of achieving admission to lawful permanent residency in this country. So I think that by, you know, suddenly deciding that adjustment of status can no longer count as an admission, that really disrupts the entire statutory scheme. I just don't see that happening. Did De Leon-Renosa undermine your notion of the plain meaning of the statute and that it obviously, as you've been arguing, leads to an absurd result? I'm not familiar with that case, Your Honor. It's a 2002 Third Circuit case, which the petitioner argued that 1182H violated the Equal Protection Clause. Still not ringing in? Sorry, no, Your Honor. All right. If there are no further questions, I'll just briefly conclude. Thank you, Ms. Brown. So we ask that you not disturb the Board's decision and deny the petition for review. Thank you. Who's going to handle rebuttal? Okay, Mr. Winograd. Thank you, Your Honors. I hope to make three quick points. First, a central premise of the Board's decision in matter of Kuljinovic was that adhering to the definition of the term admitted in Section 212H would create absurd results in other provisions of the INA. However, in December, the Board issued a precedential decision called Matter of Espinosa-Guyot that provides an assurance that that would not happen. That case is discussed on pages 9 and 10 of the petitioner's reply brief. I won't recite the facts here, but suffice to say the Board concluded that the language of 212H is unique and that the Eleventh Circuit's decision in Lanier, quote, should not be read to extend to other provisions of the Act. The second point I would make is that the Fifth Circuit's decision in Martinez was decided under Step 1 of Chevron. So even though that it was handed down before Kuljinovic, this is not a brand X situation where the Fifth Circuit would have to revisit its earlier ruling. And the Eleventh Circuit's ruling in Lanier was also decided under Step 1 of Chevron, as was the Fourth Circuit's decision in Bracamontes. The final point, opposing counsel said that if adjustment of status is not an admission, that he would not be eligible for this waiver because the hardship that his relatives would face would not be attributable to a denial of admission. Well, in this case, the petitioner is not seeking an adjustment of status. There literally was a denial of admission at the border, and what he is seeking now is a waiver of inadmissibility in conjunction to overcome that denial of admission. And I would finally note that in the matter of Kuljinovic, the Board did not rely on that rationale, and therefore it would not be an appropriate basis to affirm the agency's decision under the Chenery line of cases. Thank you, Mr. Winograd. The Court will take the matter under advisement. Thank you for the excellent argument.